**UNITED STATES of America,
Appellee,**

v.

**Garrett Brock TRAPNELL,
Appellant.**

Nos. 522 and 888, Dockets 73-2071
and 74-1018.

United States Court of Appeals,
Second Circuit.

Argued March 19, 1974.

Decided April 10, 1974.

Peter R. Schlam, Asst. U. S. Atty. (Edward John Boyd, V, U. S. Atty., for the Eastern District of New York, Raymond J. Dearie and Robert F. Katzberg, Asst. U. S. Attys., on the brief), for appellee.

Zelda Jonas, Hicksville, N. Y., for appellant.

Before LUMBARD, FEINBERG and MULLIGAN, Circuit Judges.

LUMBARD, Circuit Judge:

After a trial before Chief Judge Mishler and a jury in the Eastern District, Garrett Trapnell was found guilty on May 16, 1973 on all three counts of an indictment charging him with aircraft piracy, 49 U.S.C. § 1472(i), interference with an aircraft flight crew, 49 U.S.C. § 1472(j), and possession of a firearm in the commission of a federal crime, 18 U.S.C. § 924(c)(2). Trapnell was sentenced to concurrent terms of life imprisonment for aircraft piracy, and twenty and ten years respectively on the other two counts. On appeal, he contends that highly prejudicial testimony of three government witnesses should not have been admitted into evidence and that he should have been granted a new trial on the basis of evidence discovered after his conviction and during the pendency of this appeal. We affirm.

At approximately 2:00 a. m. on January 28, 1972 Trapnell boarded TWA flight No. 2 in Los Angeles for a scheduled nonstop flight to New York. Almost three hours later, while the Boeing 707 aircraft, carrying 93 passengers and a crew of seven, was flying 600 miles per hour at an altitude of 37,000 feet, he walked into the first class lounge and handed stewardess Constance Tokarski a note indicating that the airplane was being hijacked and that she should follow instructions if she did not want to be hurt. With Miss Tokarski leading the way, Trapnell gained entrance to the cockpit, where he pulled a gun on the crew members and ordered them to follow his instructions. In the course of the next eight hours, Trapnell, in full control of the aircraft, engaged in negotiations with authorities on the ground in an effort to obtain $306,800 in cash, amnesty and political asylum in a for-

eign country, and the release of a friend, Jorge Padilla, incarcerated in a Dallas, Texas jail. Finally, at 11:30 a. m., while the aircraft was on a runway at Kennedy Airport in New York taking on a relief crew, F.B.I. agents overpowered Trapnell by shooting him and thereby brought the hijacking to an end.

▮ Trapnell's first trial in early January 1973 ended in mistrial after the jury reported that it was unable to reach a verdict. At his second trial, the subject of the present appeal, the government called Jorge Padilla as a witness during presentation of its case-in-chief. Padilla testified that Trapnell had instructed him on how to feign insanity while they were both patients at Jackson Memorial Hospital in Miami, Florida, for several weeks during 1966. Padilla attributed his subsequent success in having criminal charges dropped against him on the ground of insanity to these instructions from Trapnell.

Trapnell argues that Padilla's testimony was improperly admitted since it was in no way probative of the crime with which Trapnell has been charged. The appellant, however, misconceives the purpose of this testimony. Although a defendant is presumed sane, once that presumption is challenged, the burden is on the government to establish the defendant's sanity beyond a reasonable doubt. Davis v. United States, 160 U.S. 469, 484, 16 S.Ct. 353, 40 L.Ed. 499 (1895). Here, Trapnell's attorney in his opening statement and in his cross-examination of the flight crew members, prior to Padilla's taking the stand, made clear that the appellant's defense would be insanity. Under the circumstances, it was entirely proper for the government to elicit testimony from Padilla which provided evidence that Trapnell's defense of insanity was without substance and that he was employing it as a means of avoiding punishment for his criminal conduct. United States v. Driscoll, 399 F.2d 135 (2d Cir. 1968). The government was entitled to present this evidence so that the jury could properly evaluate Trapnell's claims regarding his

mental state and criminal responsibility. Moreover, the trial court carefully admitted Padilla's testimony for this limited purpose.

Trapnell also challenges the admission of the rebuttal testimony of the government's psychiatrist, Dr. David Abrahamsen. The essence of Dr. Abrahamsen's testimony was that, on the basis of two examinations in October 1972 and a study of Trapnell's past medical and family history, it was his opinion that the appellant was a malingerer who had acted as a "rational man" during the hijacking.

▮ Trapnell argues that Dr. Abrahamsen's testimony should not have been admitted since it violated the appellant's fifth amendment right against self-incrimination and because he was not given the *Miranda* warning prior to his examination by the government psychiatrist or permitted to have his attorney present. In United States v. Baird, 414 F.2d 700 (2d Cir.), cert. denied, 396 U. S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1969), we held that once a defendant "puts in evidence the opinion testimony of his expert" as Trapnell did by having three psychiatrists testify on his behalf, "the Government has the right to have its expert examine the accused and to put in evidence his opinion testimony in rebuttal, and that the exercise of such right by the Government does not infringe the defendant's right against self-incrimination." *Id.* at 708. Statements made by an accused under such circumstances are verbal acts and are not protected by the fifth amendment. *Id.*

▮ We also reject Trapnell's claim that he had a right to have counsel present during his examination by Dr. Abrahamsen. In *Baird*, we held that there is no right to counsel at a psychiatric examination. Such an examination does "not constitute the kind of critical stage in the proceedings at which the assistance of counsel was needed or at which counsel could make a useful contribution." *Id.* at 711. We recognized

that the presence of counsel could very well "destroy the effectiveness of the interview." *Id.*

 Trapnell's further argument that he should have been given the *Miranda* warning has no merit. Since we have held that in this context the privilege against self-incrimination and the right to have counsel present do not apply, there would have been no point in requiring the government first to give him the *Miranda* warning. Dr. Abrahamsen was authorized by court order to determine Trapnell's responsibility at the time of the crime and addressed himself solely to this issue at trial. The defense was fully aware of Dr. Abrahamsen's purpose. Moreover, Dr. Abrahamsen did not testify and could not have testified to any inculpatory statements by the appellant since Trapnell had told him that he did not remember the hijacking.

 Trapnell also contests the propriety of the admission of the rebuttal testimony of a third government witness, Cyrus Berlowitz. Berlowitz testified that while working as an editor for *True* magazine in April 1971, Trapnell told him during an interview that he was capable of feigning insanity and thereby avoiding punishment. Berlowitz's testimony was quite relevant to the issue of the appellant's sanity, the only issue at trial, and was thus properly admitted for the limited purpose of shedding light on that issue.

 Although Padilla had already testified on direct examination that the appellant had claimed that he could avoid punishment by feigning insanity, the trial judge had "wide discretion in permitting the introduction of evidence in rebuttal which might well have been brought out in the Government's case in chief." United States v. Lieblich, 246 F.2d 890, 895 (2 Cir. 1957). Since defense counsel had attempted to impeach Padilla's credibility on cross-examination and to introduce evidence establishing Trapnell's insanity, it was not improper for the court to permit the government to introduce evidence in rebuttal tending to corroborate Padilla's testimony. The several other arguments made by the appellant challenging the admissibility of the testimony of Padilla, Abrahamsen, and Berlowitz are without merit.

The appellant's final contention is that the trial judge erred in denying his motion for a new trial. We do not agree. At a hearing before Chief·Judge Mishler on December 14, 1973, pursuant to remand by this court during the pendency of this appeal, Trapnell's wife, Suzanne, testified that on June 9, 1973 at the Federal House of Detention in New York City, Padilla admitted to her that he had lied when he testified that Trapnell had instructed him on how to feign insanity. Herbert Sperling, an inmate at the detention center, also testified for the appellant that he had heard Padilla "yelling to [Mrs. Trapnell], telling her that he's sorry. He was apologizing to her that he had lied about her husband," suggesting that he had done so in the hope that the thirty-year sentence he was then serving would be reduced. Sperling also testified, however, that he had not actually seen Padilla while he was speaking, that he had never had a conversation with him, and that he had previously heard his voice only two or three times. Sperling also stated that he had heard Padilla make these comments as Mrs. Trapnell was entering the visiting area, although Mrs. Trapnell had stated that Padilla had spoken to her after she had seen her husband as she was leaving the visiting area.

 Padilla testified at the hearing that he had seen Mrs. Trapnell that day, but he offered a different version of their encounter. He stated that she had approached him and asked: "Why did you do it?" to which he responded: "I just did what I felt was right, I told everything I knew." Deputy Marshal McNeill, who was present at the time, testified that he recalled Padilla saying: "I had to do what was right."

In denying Trapnell's motion for a new trial, Judge Mishler, relying on

United States v. Polisi, 416 F.2d 573, 576 (2d Cir. 1969), concluded that the evidence at the hearing could only impeach the credibility of Padilla and to that extent was cumulative and not material to the issue of the appellant's sanity. At the trial, the defense had had ample opportunity to impeach Padilla's credibility and had attempted to do so by bringing out his hostility to Trapnell, his prior criminal record, and his agreement with the government to testify in return for a ten-year reduction in sentence.

The trial judge also concluded that the newly discovered evidence was not "of such a nature that it would probably produce a different verdict in the event of a retrial," United States v. Polisi, 416 F.2d at 577, especially since Padilla's testimony had been fully corroborated by Berlowitz's rebuttal testimony.

On this record, there was ample support for the denial of the motion for a new trial.

Affirmed.