**UNITED STATES of America**

v.

**Larry Drake ATKINSON.**

No. 7299–Cr.

United States District Court,
E. D. North Carolina,
Wilmington Division.

March 30, 1977.

Jack B. Crawley, Jr., Asst. U. S. Atty., Raleigh, N. C., for plaintiff.

Loflin & Loflin, Durham, N. C., Reginald L. Frazier, New Bern, N. C., for defendant.

## MEMORANDUM DECISION
## AND ORDER

BUTLER, Senior District Judge.

The petitioner, Larry Drake Atkinson, was convicted by a jury of two counts of possession of heroin with intent to distribute and two counts of distribution of heroin in violation of 21 U.S.C. § 841(a)(1). On appeal, the judgment of conviction was affirmed. *United States v. Atkinson*, 513 F.2d 38 (4th Cir. 1975). Thereafter, Atkinson filed a motion to vacate sentence and for a new trial, and contends that the United States knowingly and intentionally failed to disclose to the petitioner material

evidence tending to show that the government witness, Charles Edward Pennington, committed perjury at the petitioner's trial concerning said witness' prior criminal convictions, and that the United States also failed to disclose evidence tending to show bias and affecting the credibility of said witness. The petitioner invokes the jurisdiction of the court under 28 U.S.C. §§ 2255 and 1651(a), and Rule 33, Federal Rules of Criminal Procedure.

The investigation which led to the federal prosecution of this case was a state undertaking without federal participation. The principal government witness, Charles Edward Pennington, was working as an undercover narcotic informer for the Wilmington Police Department and testified that on July 16 and 17, 1973, he made the purchases of heroin from the petitioner which were the basis of the petitioner's conviction.[1] Pennington was the only witness who testified to the petitioner's presence at the times and place of the purchases and to the petitioner's participation in the possession and distribution of the heroin.

The credibility of a witness is to be judged by the trier of fact, and in this case the sufficiency of the evidence to support the jury's finding of Atkinson's guilt rested solely upon the credibility of the testimony of Pennington.

On direct-examination Pennington testified in response to questions by an Assistant United States Attorney as follows:

Q. . . . (H)ave you ever been convicted of any crime?

A. Yes sir.

Q. And what was that sir?

A. It was a traffic altercation involving a ticket on Southern California Expressway sir.

Q. And what was the charge, if you recall? What did they call it?

A. Obstructing an officer I believe.

Q. And have you been convicted of anything else other than traffic offenses?

---

1. The opinion of the Court of Appeals will provide a detailed account of the heroin transactions between Atkinson and the government witness Pennington. *United States v. Atkinson, supra.*

A. No sir. (Tr. p. 8)

Upon cross-examination Pennington testified in substance that he was unemployed at the present time; that he was partially supported by his wife and family, and that he also received subsistence from the United States Justice Department; that he had been in protective custody since September 7, 1973, and that the Department of Justice had paid his rent and given him an average of about $400 a month for subsistence for himself, his wife and brothers; that the money was not given to him in exchange for his testimony at this trial but because he was in protective custody and not allowed to work. (Tr. pp. 41–46)

Pennington further testified on cross examination in response to questions by defense counsel as follows:

Q. Now Mr. Pennington, you indicated that you have had but one conviction in the State of California, is that correct?

A. That is correct sir.

Q. And that was a conviction for obstruction of justice, was it?

A. No sir.

Q. What was it for? What was the conviction for?

A. My citation read, "obstructing an officer". I was a passenger in a car when he, a friend, received a speeding violation and I opened my mouth when I shouldn't have and I was also cited sir.

Q. You never had an assault on this officer did you?

A. No sir, I did not.

Q. Now Mr. Pennington, are you testifying in this case here because you are being paid by the United States Government to do so?

A. Sir, I am testifying in this case because if someone don't do something to curb the Heroin traffic in New Hanover County and the rest of the United States, then we don't have any need for the law service.

Q. In other words, you love this country very much do you not?

A. I do sir.

\*   \*   \*   \*   \*   \*

Q. In addition to receiving money from the Department of Justice Mr. Pennington, are you testifying for any other reason other than what you have just now told us?

A. Yes sir I am.

Q. And what reason is that?

A. I have, I had sir, a cousin that was eleven years old. He died from an overdose of Heroin. I lived a long time in New York. My wife and family are from Wilmington. I used Heroin myself for approximately two months. I know what it can do. No police officer, no law authority asked me for any help. I went to them myself sir and begged, asked what could I do to try to help curb the Heroin traffic.

Q. And that is the only reason you are testifying, so as to help people from this plight are you not?

A. No sir.

Q. And what other reason is there?

A. I would like very much to see the people responsible for Heroin traffic in the streets to be dealt with in any way so that they can be stopped.

Q. And you are going to do everything possible to that end, is that not so?

A. Everything I can possibly do sir.

Q. And you will lend your services as fully as possible to that end? Is that not so?

\*   \*   \*   \*   \*   \*

A. No sir I will not.

Q. Is there any other reason that you are testifying, in addition to what you have already testified to?

A. None that I could think of sir.

Q. There is no recent concern with any matter pending against you is there?

MR. DEAN: OBJECTION.

COURT: SUSTAINED. (Tr. pp. 46–49)

In compliance with petitioner's motion to compel discovery and pursuant to an order of court, the United States has filed a response and a certificate of compliance with

said order, and has submitted to the court, for an *in camera* inspection, the entire government file in this case which is in the possession of the United States Attorney for this district. Upon an examination of said file, the court finds that the United States has furnished the petitioner all the information in the possession of said United States Attorney concerning the government witness Charles Edward Pennington; that said file does not contain any material, documents or information indicating that the government had any understanding, express or implied, or made any promises or arrangements with the witness Pennington to induce or influence his testimony in the trial of this case, and that said file does not contain any information relevant to the subject matter involved in petitioner's motion for a new trial or any issues that might be raised in said motion or reasonably calculated to lead to the discovery of admissible evidence that has not now been disclosed to the petitioner.

I

Petitioner claims that the United States failed to disclose evidence tending to show that Pennington committed perjury at petitioner's trial concerning Pennington's prior convictions, and that the Office of the United States Attorney intentionally concealed evidence of Pennington's past history in the armed services.

On March 18, 1974, prior to the trial of petitioner in March–April 1974, an Assistant United States Attorney was informed by the Federal Bureau of Investigation that on December 29, 1972, Pennington had absented himself from the United States Marine Corps, Camp Lejeune, North Carolina, and was dropped from the rolls of the Marine Corps as a deserter on January 4, 1973.

The United States Attorney, through his assistant, informed the FBI that Pennington was in protective custody and was scheduled to appear as a government witness in the United States District Court in Wilmington during the week of March 25, 1974, and requested that "no action be taken to apprehend Pennington at this time."

The United States Marshal was informed of Pennington's deserter status, and the United States Marine Corps was notified in order that they might file a detainer against Pennington's release from protective custody. The United States Attorney did not discuss the pending desertion charge with Pennington until after he had testified for the government at the petitioner's trial. (Affidavit of Jack B. Crawley, Jr., Assistant U. S. Attorney.) The United States Attorney had also been informed that Pennington had been arrested by the Wilmington, N. C. Police Department on May 5, 1973, for armed robbery, and subsequently had been used in an undercover capacity by the Interagency Drug Squad at Wilmington.

For the purpose of impeachment, defense counsel questioned Pennington concerning his prior *convictions.* Pennington had not been convicted of the desertion or the armed robbery offenses at the time of Atkinson's trial, and the only prior conviction of Pennington known to the prosecution was his conviction in California of "obstructing an officer" which fact was disclosed by Pennington during his direct and cross examinations. (Trial Tr. pp. 8, 46 and 47.) Further, the prosecution had no knowledge of Pennington's past history in the armed services, other than the pending desertion charge.

The Court of Appeals for the Fourth Circuit in *United States v. Pennix,* 313 F.2d 524, 531 (1963) said:

"The rule ordinarily to be followed in this Circuit has been stated as follows: In criminal cases a witness may be asked, for purposes of impeachment, whether he has been *convicted* of a felony, infamous crime, petit larceny, or a crime involving moral turpitude." (Emphasis supplied).

Also, in *Pennix,* at page 528, the court, quoted from *Coulston v. United States,* 51 F.2d 178, 182 (10 Cir. 1941), as follows:

"A witness may not be asked if he has been accused or arrested for a crime, for the sufficient reason that it calls for hearsay evidence, and because accusation carries no implication of guilt. [Citations omitted.]"

■ Thus, as a general rule, only convictions of a felony, or a crime involving moral turpitude, are admissible to impeach the credibility of a witness. On the contrary, convictions of misdemeanors not involving moral turpitude, and evidence of prior arrests, charges, or indictments have no bearing on truth or veracity, and therefore are not admissible. *U. S. v. Pennix, supra; U. S. v. Frazier,* 418 F.2d 854 (4 Cir. 1969); *U. S. v. Turner,* 497 F.2d 406 (10 Cir. 1974); *U. S. v. Allende,* 486 F.2d 1351 (9 Cir. 1973); *Johnson v. U. S.,* 424 F.2d 537 (9 Cir. 1970); *Ciravolo v. U. S.,* 384 F.2d 54 (1st Cir. 1967). See, also, Rule 609, Federal Rules of Evidence.

■ Therefore, in the posture of this case at the time of petitioner's trial, the pending charges against Pennington of desertion and armed robbery, although known to the prosecution, had not resulted in convictions, and could not have been used in the cross examination of Pennington for impeachment purposes. Furthermore, the defense made no request of the prosecution for Pennington's arrest or conviction record or, in fact, for any evidence favorable to the accused. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). No admissible evidence, known to the prosecution, was withheld from defense counsel. Petitioner's claims that the United States knowingly and intentionally failed to disclose evidence tending to show that Pennington committed perjury at petitioner's trial concerning Pennington's prior convictions, and that the Office of the United States Attorney knowingly and intentionally concealed evidence of Pennington's past history in the armed services are without merit.

## II

Petitioner's claims that he is entitled to a new trial on the basis of newly discovered evidence to the effect that the prosecution witness Pennington perjured himself at petitioner's trial concerning Pennington's prior criminal record.

In response to petitioner's motion for discovery and in compliance with an order of court, the prosecution has obtained and submitted to the court and to counsel for petitioner information relative to Pennington's civilian and military service record which was unknown to the prosecution at the time of the trial. See, Pennington's FBI rap sheet, Exhibit B, attached to the government's Supplement to Response, filed February 4, 1976, and Pennington's military service record, Exhibits C, D, and H, attached to the government's Response, dated August 2, 1976.

## PENNINGTON'S FBI RAP SHEET

The FBI rap sheet discloses that at the time of petitioner's trial, Pennington had been arrested by the Police Department of Los Angeles, California, and was charged and convicted of a misdemeanor battery; that imposition of sentence was suspended and he was placed on probation for one year, and fined $50. The rap sheet also discloses that Pennington had been arrested by the Police Department of Wilmington, North Carolina, and indicted for armed robbery but no disposition had been made of that charge. In addition, the rap sheet discloses that Pennington had been convicted of several misdemeanors, including traffic violations, and that he had been arrested on three felony charges as follows: October 22, 1971, passing forged checks; February 11, 1972, car theft; and March 15, 1973, possession of cocaine, but the record indicates that he had not been convicted of any felony.

The last three entries on the rap sheet are under the name of Charles Edward Brown: April 29, 1974, burglary; June 9, 1974, residential burglary, and June 17, 1974, possession of narcotics and other charges. The arrests for these state charges occurred after Pennington's testimony at petitioner's trial, and had not resulted in a conviction.

## PENNINGTON'S MILITARY SERVICE RECORD

Pennington's military service record discloses that his testimony at petitioner's trial concerning his prior criminal record was

false in the following respects: that he had but one prior conviction of "obstructing an officer" in California, and that he had not been convicted of anything else other than traffic offenses.

The military service record discloses that in addition to several convictions for unauthorized absences (AWOL), Pennington was convicted by a summary court-martial on April 9, 1970, of the following offenses: (1) striking a Lance corporal then having MP duties; (2) assaulting a female marine corporal then having MP duties; (3) violation of a general order by not wearing a necktie, and (4) violation of a general order by leaving his appointed place of duty. The sentence as finally approved provided for reduction to pay grade E–4, forfeiture of $203.00 for one month, and 45 days restriction to specified limits without suspension from duty.

It further appears that Pennington was convicted by a general court-martial on October 29, 1970, of the following offenses: (1) possession .08 grams marihuana; (2) possession of materials associated with the use of narcotics; (3) violation of restriction to barracks; (4) absence without leave; (5) aggravated assault; and (6) kidnapping. The findings of guilty of the assault and kidnapping charges were set aside by the Court of Military Appeals on September 16, 1974, and the sentence was modified to a bad conduct discharge, confinement at hard labor for six months, forfeiture of $100.00 pay per month for six months, and reduction to pay grade E–1.

It also appears that Pennington was convicted by a general court-martial on March 31, 1972, of two charges of being absent without leave. The U. S. Navy Court of Military Review on August 22, 1972, modified the sentence to a bad conduct discharge, confinement at hard labor for three months, total forfeiture, and reduction to pay grade E–1.

This is not a case, as previously stated, of the knowing and intentional use of perjured testimony by the prosecution. Rather, it is a case in which evidence newly discovered, after trial, previously unknown to the pros-

ecution and the defense, reveals that the government witness Pennington, whose credibility was essential to sustain petitioner's conviction, testified falsely in denying prior criminal convictions. Rule 33, Federal Rules of Criminal Procedure, provides: "The court on motion of a defendant may grant a new trial to him if required in the interest of justice. . . ." Where, as in this case, the Government's case must stand or fall on the jury's belief or disbelief of one witness, his credibility is subject to close scrutiny. *Gordon v. U. S.,* 344 U.S. 414, 417, 73 S.Ct. 369, 372, 97 L.Ed. 447 (1953). July 16 and 17, 1973, are the critical dates on which the government asserts that Atkinson possessed and distributed the heroin. As previously noted, Pennington was the only witness who testified to Atkinson's presence at the time and place of the criminal acts charged against him. His testimony implicating Atkinson was not cumulative nor corroborated by any other witness. Thus, Pennington's credibility and the jury's belief in the truthfulness of his testimony were essential to a finding of Atkinson's guilt.

■ Newly discovered evidence that merely goes to impeach the credibility of a prosecution witness does not ordinarily warrant the granting of a new trial, *U. S. v. Frankfeld,* 111 F.Supp. 919, 923 (D.C.Md. 1953) affirmed sub nom. *Meyers v. U. S.,* 207 F.2d 413 (4 Cir. 1953); *U. S. v. Johnson,* 142 F.2d 588 (7 Cir. 1944); *U. S. v. Rutkins,* 208 F.2d 647 (3 Cir. 1953). See *U. S. v. On Lee,* 201 F.2d 722, 725–726 (2 Cir. 1953, dissenting opinion); but in some circumstances the newly discovered evidence, although impeaching is sufficiently important in the ascertainment of the truth and in the interests of justice that a new trial should be ordered. *U. S. v. Gordon,* 246 F.Supp. 522 (D.D.C.1965); *Gordon v. U. S.,* 127 U.S. App.D.C. 343, 383 F.2d 936 (1967); *U. S. v. Segelman,* 83 F.Supp. 890 (D.C.Pa.1949); *Mesarosh v. U. S.,* 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956).

On cross examination counsel for the petitioner undertook to attack the credibility of Pennington in an effort to disclose

whether his testimony was motivated by bias, interest, or expectation of any advantage he might receive in return for his testimony. Pennington testified in substance that his only prior conviction was for obstructing an officer and that he had not been convicted of anything else other than traffic offenses; that he and his wife and brothers were in protective custody, and that the United States Department of Justice paid their rent and gave him an average of $400 a month for their subsistence; that the money was not given to him in exchange for his testimony in this trial; that he was testifying for the reasons that he had a young cousin who died from an overdose of heroin and that he went to the authorities and asked what he could do to help curb the heroin traffic so that the people responsible could be dealt with, and that he had no other reasons for testifying.

The newly discovered evidence upon which petitioner relies is disclosed, in part, by Pennington's FBI rap sheet and Pennington's military service record which have heretofore been summarized. In contradiction of Pennington's trial testimony, the records show that he had been convicted of numerous offenses including felonies and misdemeanors, which in the light of his denial, would have impugned the veracity and the credibility of the prosecution's crucial witness. The records further show that as a result of court-martial convictions, Pennington had been sentenced to confinement at hard labor and to a bad conduct discharge from military service.

Additional newly discovered evidence upon which petitioner relies, as indicating an interest and bias that motivated Pennington in testifying for the government, is disclosed by the opinion of the Supreme Court of North Carolina in the case of *State v. Spicer,* 285 N.C. 274, 204 S.E.2d 641 (Opinion filed May 15, 1974). Spicer was convicted of first degree murder and sentenced to death. Pennington testified as a State's witness in the trial of the *Spicer* case in the New Hanover Superior Court in September 1973. There Pennington testified in substance that he was a prisoner for

four days in the Wilmington jail charged with robbery [the eighth entry on the FBI rap sheet]; that he was held in default of $5,000 bond; that he sent for Officer Howell [a detective of the New Hanover Sheriff's Department] and offered to help him uncover dealers in narcotics; that without effort on his part his bond was reduced from $5,000 to $400 and he was released after talking to Officer Howell. Pennington further testified in the *Spicer* case: "The New Hanover County Sheriff's Department does not pay me a salary. No, sir; they aren't paying for rent on my apartment."

The record on appeal to the Supreme Court of North Carolina in the *Spicer* case contains the following: "It is hereby stipulated by both parties to this appeal that Pennington, along with his wife and brother, were being held in protective custody in a residence in New Hanover County by New Hanover County Sheriff's deputies at county expense as a prospective witness for the State in several drug cases." *State v. Spicer,* 285 N.C. at pp. 277–278, 204 S.E.2d at pp. 643–644.

The State Supreme Court reversed Spicer's murder conviction based, in part, on the ground that the trial judge sustained the State's objection to the repeated efforts of defense counsel to find out who was paying the living expenses of the witness Pennington and his wife. The court said: "The purpose was to discover to whom the witness was indebted for such favors and to ascertain to what extent the favors colored his testimony against Spicer. . . . 'The defendant had a right to have the jury informed as to these matters and to debate before the jury the effect of such circumstances upon the credibility of the witness'."

Although Pennington admitted in the trial of the instant case that he and his family were receiving subsistence from the United States Department of Justice as a government witness (Tr. pp. 42–46), he also testified that he worked voluntarily as an undercover narcotic informer for the Wilmington Police Department from June 24

to August 5, 1973, and that the only money he received was $1.40 to pay for a prescription. (Tr. pp. 7, 45.) Pennington's denial in the trial of this case of receiving subsistence for his undercover informer work in New Hanover County is belied by the stipulation filed in the record on appeal in the *Spicer* case.

In passing upon a motion for a new trial on the ground of newly discovered evidence, the new evidence must be considered in the light of the entire record made at the trial and on the motion, including the strength of the evidence presented at the trial.

Here Pennington was the only witness who testified to petitioner's participation in the heroin transactions, and the jury's belief in the truthfulness of Pennington's uncorroborated testimony was essential to a finding of petitioner's guilt. The newly discovered evidence in this case sufficiently impugns the veracity and credibility of the witness Pennington that in the interest of justice the jury should have the opportunity of passing upon the credibility of said witness.

I am of the opinion that whichever test is applied, *Berry*,[2] or *Larrison*,[3] the petitioner is entitled to a new trial. The newly discovered evidence in this case, developed by skilled counsel, "might" have and "probably" would have induced a reasonable doubt in the minds of enough jurors to avoid a conviction. *U. S. v. Miller*, 411 F.2d 825 (2d Cir. 1969).

Now, therefore, it is ORDERED that the motion of the petitioner, Larry Drake Atkinson, to set aside the verdict of the jury and the judgment entered thereon, and for a new trial, be and it is hereby granted.

It is further ORDERED that the United States retry the petitioner within a reasonable time, if it elects to do so.

---

2.  *Berry v. State*, 10 Ga. 511, 527 (1851).

3.  *Larrison v. U. S.*, 24 F.2d 82, 87 (7th Cir. 1928).