### UNITED STATES of America
### v.
### Mir M. YOSUF.
### Crim. No. 79–107–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

Sept. 11, 1980.

Joseph J. Aronica, Asst. U. S. Atty., Justin W. Williams, U. S. Atty., Charles E. Chapman, Sp. Asst. U. S. Atty., Alexandria, Va., for plaintiff.

Joseph M. DiJoseph, Arlington, Va., for defendant.

## MEMORANDUM ORDER

CLARKE, District Judge.

On July 20, 1979, Mir M. Yosuf, the defendant herein, was tried by a jury in this Court and found guilty of the charges in all six counts of the indictment. Two of the counts were for mail fraud, in violation of 18 U.S.C. § 1341, and four counts were for wire fraud, in violation of 18 U.S.C. § 1343. The defendant was sentenced on August 22, 1979, and noted a timely appeal to the United States Court of Appeals for the Fourth Circuit. Thereafter, on August 4, 1980, the Fourth Circuit Court of Appeals received from defendant's counsel a Motion for a New Trial based on newly discovered evidence. By Order entered August 27, 1980, the Circuit Court transferred the Motion for New Trial to this Court with the direction that this Court decide the issue raised therein.

The criminal prosecution in this matter arose out of a claim made by Mir M. Yosuf that his house had been burglarized and a number of articles stolen, the principal ones of which were two valuable, handmade Afghan rugs. On the basis of this alleged burglary, the defendant made a claim against his insurance company. In making that claim, the defendant used the United States mail and the telephone, thus giving rise to the specific charges in the indictment. The Government contends that there was no burglary and that the claim against the insurance company was fraudulent.

The Government's principal witness at the trial was Ms. Hafiza Riaz, a lady who

was a personal friend of Mir M. Yosuf and, who, at the time of the alleged burglary, was living at his home. Briefly stated, she testified that the burglary had been faked and that the rugs and other articles alleged to have been stolen had not actually been stolen, but had been secreted by Mr. Mir.

The defendant now contends that he is entitled to a new trial on the basis of affidavits from three people submitted with his Motion for a New Trial. Affiants Chillak and Mayar state that, after the trial, Ms. Riaz admitted to them that she gave false testimony at the trial. Affiant Hassainkhail states that Ms. Riaz indicated her willingness to make a tape recording recanting her trial testimony in return for money to be used to leave the country. In its response, the Government attached an affidavit from Ms. Riaz which, although executed post-trial was executed prior to Hassainkhail's affidavit, in effect denied the allegations in his affidavit.

█ Although a new trial generally must be ordered when a court is convinced that the testimony of a material witness is perjured, *see, e. g., United States v. Mackin,* 561 F.2d 958 (D.C.Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977); *Housden v. United States,* 517 F.2d 69, 70 (4th Cir. 1975), newly discovered evidence, whose only effect is to contradict or attack the credibility of witnesses, will not warrant a new trial, in the absence of very unusual or extraordinary circumstances, *see, e. g., Shotwell Manufacturing Co. v. United States,* 371 U.S. 341, 356–57, 83 S.Ct. 448, 457–58, 9 L.Ed.2d 357 (1963); *United States v. Garner,* 529 F.2d 962, 969 (6th Cir.), *cert. denied,* 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 124 (1976). The Court in *Shotwell,* however, did not specify what extraordinary circumstances would justify the granting of a new trial, and this Court's examination of the law discloses only a small handful of cases decided since then where newly discovered impeaching evidence was held to justify the granting of a new trial. *See Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *United States v. Atkinson,* 429

F.Supp. 880 (E.D.N.C.1977); *United States v. Gordon,* 246 F.Supp. 522 (D.D.C.1965). In *Giglio,* the Assistant United States Attorney who had presented the case to the grand jury admitted after the trial that he had promised the Government's key witness immunity from prosecution if the witness testified at the trial. This information had been withheld from the jury. 405 U.S. at 153–55, 92 S.Ct. at 765–66. Similarly, in both *Atkinson* and *Gordon,* the newly discovered impeaching evidence was an arrest record that clearly contradicted the sworn testimony of the prosecutor's key witness that he had not been convicted of a serious criminal offense. *See* 429 F.Supp. at 885–86; 246 F.Supp. at 525. Thus, in all the cases where a new trial was granted because of newly discovered evidence, the impeaching evidence was clear and uncontradicted, and substantially affected the credibility of a key witness.

In *Mills v. United States,* 281 F.2d 736 (4th Cir. 1960), the Fourth Circuit stated that, in order for newly discovered evidence to warrant a new trial,

'(a) The evidence must be in fact, newly discovered, i. e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, *must not be merely cumulative or impeaching;* (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.'

*Id.* at 738 (emphasis added) (quoting *Johnson v. United States,* 32 F.2d 127, 130 (8th Cir. 1929). *See also United States v. McCoy,* 478 F.2d 846, 847 (4th Cir. 1973).

Where the credibility of the chief prosecution witness has been thoroughly explored at the trial, or the defense has had ample opportunity to do so, appellate courts, absent suppression of evidence by the prosecution, consistently have upheld the trial court's decision denying a new trial. *See United States v. Zane,* 507 F.2d 346 (2d Cir. 1974), *cert. denied,* 421 U.S. 910, 95 S.Ct. 1563, 43 L.Ed.2d 775 (1975); *United*

*States v. Trapnell,* 495 F.2d 22 (2d Cir.), *cert. denied,* 419 U.S. 851, 95 S.Ct. 93, 42 L.Ed.2d 82 (1974); *United States ex rel. Rice v. Vincent,* 491 F.2d 1326 (2d Cir.), *cert. denied,* 419 U.S. 880, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974). For example, the *Zane* court held that a new trial was not required despite the post-trial discovery of forged letters sent by the Government's key witness because the credibility of this witness had been thoroughly explored during the trial through his testimony, under cross-examination, of prior fraudulent activities and perjury. 507 F.2d at 348. The court reasoned that such evidence was only cumulative on the issue of credibility and, therefore, had no bearing on the issue of defendant's guilt. *Id.; see also United States v. Trapnell,* 495 F.2d at 26.

In *United States v. Calacurcio,* 499 F.2d 1401 (9th Cir. 1974), the defendant asserted, as one of his grounds for a new trial, that the key Government witness had given perjured testimony. This allegation was supported by the affidavit of a third party but was denied by the witness.[1] The appellate court held that because the trial judge had credited the witness' denial, he was justified in denying a new trial. *Id.* at 1406.

 Based on this analysis of the law, this Court finds that, in dealing with the effect of newly discovered impeaching evidence on a motion for a new trial, the applicable test is the five-part one set out by the Fourth Circuit in *Mills.*[2] As reflected by the holdings in *Zane* and *Calacurcio,* additional factors bearing on this Court's analysis are the exploration of the witness' credibility at the trial and any denials by the witness that its trial testimony was false.

 The Court has carefully reviewed the entire transcript of the trial testimony. It is clear from such review that the credibility of Ms. Riaz as to every aspect of her testimony was thoroughly tested during the trial.

## CROSS–EXAMINATION OF RIAZ

During vigorous cross-examination (T. at 105–155), defendant's counsel attacked Ms. Riaz's character:

1. For not raising her own children in Afghanistan (T. at 107–108);

2. For not reporting promptly to the police that the burglary was a fake (T. at 117 & 142–146);

3. By suggesting she had a financial interest in the faked burglary (T. at 118);

4. By suggesting that the U.S. Postal Inspector investigating the case was somehow cooperating with Ms. Riaz in the prosecution of an assault charge against Mr. Mir (T. at 124–127);

5. By implying that Ms. Riaz got drunk and called Mr. Mir in violation of the terms of the state court order on the assault charge (T. at 127–128);

6. By implying that the Postal Inspector and Ms. Riaz were acting improperly in connection with Riaz's report to the inspector on the presence of the articles allegedly stolen in Mr. Mir's house (T. at 128–129);

7. By asserting, through his questions, that Ms. Riaz's testimony was motivated by a lover's quarrel with Mr. Mir rather than by the truth (T. at 129–130);

8. By showing that Ms. Riaz gave false information to the Government on various forms which she filled out (T. at 146–153); and

9. By showing that Ms. Riaz was in the country illegally (T. at 147).

---

1. The defendant was granted a hearing on the motion by the trial judge. The discussion by the court of appeals, however, clearly demonstrates that the trial court was not required to grant such hearing but, rather, that such motions are ordinarily decided solely upon affidavits. *United States v. Calacurcio,* 499 F.2d 1401, 1406 & n.7 (9th Cir. 1974).

2. In applying this test, this Court acknowledges that, under exceptional circumstances, newly discovered evidence impeaching the credibility of a witness might provide grounds for a new trial.

During the cross-examination of Ms. Riaz, Mr. Mir's counsel also attacked her general credibility:

1. By showing that Ms. Riaz had filed assault charges against Mr. Mir in state court after the alleged burglary and after she discontinued living with him (T. at 123–126);

2. By inferring that her testimony was motivated by a desire to escape prosecution for giving false information to the Government (T. at 153–154); and

3. By showing that Ms. Riaz had given perjured testimony in a previously given deposition involving another matter (T. at 155–161).

Additionally, defendant's counsel attacked specific areas of Ms. Riaz's testimony as follows:

1. Her assertion of who was responsible for Ms. Riaz's being absent from Mr. Mir's house on the night of the alleged burglary (T. at 108–110);

2. Her recollection of events of the morning after the alleged burglary (T. at 111–117);

3. Her identification of the stereo set (T. at 121–123), rugs (T. at 132–137) and fur blankets or rugs (T. at 139–142) allegedly stolen in the burglary;

4. Her recollection of what was in the house before the alleged burglary (T. at 130–132); and

5. Her assertion that she never rode to or home from any state court session on the assault charge with the Postal Inspector (T. at 127).

6. Her assertion that she had not told the defendant that she had reported the false burglary to the authorities during a conversation that took place when she went to defendant's house to pick up some of her things after she had moved out (T. at 129) (see section on Contradictory Testimony).

### PERTINENT PARTS OF MS. RIAZ'S DIRECT TESTIMONY AFFECTING NEW TRIAL ISSUE

In her direct testimony, Ms. Riaz stated that she was married to Abduljalil Noorzay, who lived in California. The marriage took place in August 1975 in Reno, Nevada. Ms. Riaz separated from her husband when she returned to Afghanistan. She had been previously married and divorced in Afghanistan. She also stated that she had two children by her first husband who lived with her parents in Afghanistan. (T. at 17–22)

The defendant and Ms. Riaz had met in Washington, D.C., and had stayed in touch with each other during Ms. Riaz's first visit to the United States. After Ms. Riaz returned to Afghanistan, Mr. Mir visited his native country, and the two became constant companions. Mr. Mir then successfully persuaded Ms. Riaz to return to this country with him. She lived with the defendant in Springfield, Virginia, from October 1977 until April 28, 1979 (T. at 28–29).

When Mr. Mir and Ms. Riaz returned to this country together (T. at 37), they brought with them two rugs (T. at 31 & 49–50). Riaz became very familiar with the rugs (T. at 31–32 & 38). Riaz was with Mir when he bought the red rug at Asdula Faizi, a store in Kabul, Afghanistan (T. at 33–37). Rohim Ibrahimi was not with Riaz and Mir when the rug was bought (T. at 132). They brought the rug from Afghanistan to the Springfield address together (T. at 37–38 & 40). The second rug was a green one given to Mir by his cousin, Mohammad Sarwar. Ms. Riaz testified at length about the use of and her exposure to the rugs (T. at 50–64).

Ms. Riaz also testified about and identified a stereo set (T. at 64–75). Next she testified about and identified two fur blankets. (T. at 75–82).

This witness further stated that on the evening before the alleged burglary Mir asked her to spend that night with neighbors (T. at 83–84). Mir told Riaz "I'm going to put these rugs away with this stuff and call the police tomorrow and tell them that my house was robbed." (T. at 84) Ms. Riaz did spend the night at the neighbor's house and the next morning when she returned to Mir's house the police were there

investigating the alleged burglary (T. at 85). The rugs were then missing from the house (T. at 85–87). Mr. Mir called the insurance company to make the claim (T. at 88). A couple of days after the "burglary" Ms. Riaz saw the stereo and the rolled up rugs under the bed. A couple of months later they were used during a party and were in frequent use thereafter (T. at 94–95).

The witness claimed to be Mrs. Mir at Mir's direction at the Social Security office and in documents filed with the Immigration Service and the Social Security office (T. at 99–101). The Government has made no promises of non-prosecution in respect to the false information given or of non-deportation in return for the testimony given, except that she would not be deported until the trial was over (T. at 101–102).

## CONTRADICTORY TESTIMONY

In addition to the attacks on Ms. Riaz's credibility made during cross-examination, other witnesses contradicted various aspects of her testimony in the following important respects.

### Rahim Ibrahimi

Defendant's witness Rahim Ibrahimi testified that Riaz was not with defendant when the rug or rugs were purchased in Kabul (T. at 328, 340). He stated that a red and a blue rug were purchased (T. at 325) and stated that neither rug in the courtroom was purchased at the time in Kabul (T. at 333, 340). Further, this witness had a different version of the size of the rugs purchased (T. at 356–359). He also indicated by his testimony that Riaz and Mir did not leave Afghanistan together (T. at 351–356).

### Mir Yosuf

The defendant Mir Yosuf testified that it was Ms. Riaz's idea and not his to spend the night before the alleged burglary with neighbors (T. at 378–379 & 429–430). Mr. Mir also testified that the rugs seized pursuant to the search warrant and which were produced in court were brought to him from Afghanistan by Abbas Syed after the burglary (T. at 388, 419–425). The defendant's testimony on the size and color of the rugs allegedly stolen differed from that of Riaz (T. at 382, 383, 388, 395, 396, 400, 444, 461–464). Mr. Mir's testimony concerning the fur blankets or rugs differed from that of Riaz (T. at 390–392). His testimony also differed concerning the identification of the allegedly stolen stereo (T. at 357, 358, 394). Mr. Mir's version of the assault charges also differed from Ms. Riaz (T. at 408). In addition, Mr. Mir testified that Riaz told him when she came to pick up her clothes after they had separated that she had reported the alleged false burglary to the authorities and suggested that he had better move the rugs (T. at 409–412). (Compare with Riaz testimony on cross-examination at T. 129).

The defendant also contradicted Ms. Riaz's testimony concerning why she stated that she was Mrs. Mir on documents filed with Social Security and Immigration officials (T. at 414, 415).

### Jalaudein Fakari

This witness contradicted Ms. Riaz's testimony concerning the identification of the allegedly stolen stereo set (T. at 479).

### Ada L. Fols

This witness gave testimony which might be considered contradictory to Ms. Riaz's testimony in that she thought that one of the allegedly stolen rugs was blue rather than green (T. at 493–497).

### John Fols

This witness' testimony might also be considered contradictory to Riaz's testimony concerning the rugs in that he recalled that one of the rugs allegedly stolen was blue rather than green and that both rugs allegedly stolen were larger than those identified by Ms. Riaz as having been stolen (T. at 498–505).

### Asad Sekandari

This witness disagreed with Ms. Riaz with respect to the size of the rugs allegedly stolen (T. at 505–510).

*Abbas Syed*

This witness testified that the two rugs which were exhibited in court to the jury, which Riaz contended were those she and the defendant brought from Afghanistan, and which were fraudulently alleged by the defendant to have been stolen, were, on the contrary, brought by this witness from Afghanistan sometime after the alleged burglary (T. at 515).

## CONCLUSION

The Court has deliberately refrained from reciting any evidence supportive of Ms. Riaz's testimony for it is the purpose of this opinion to determine, not whether her testimony is supported, but whether it has been sufficiently challenged and tested to withstand a motion for new trial.

The Court concludes that the credibility of witness Riaz's testimony was thoroughly explored and tested during the trial. Every important element of her testimony was vigorously challenged at trial. While specific denials of the affidavits of Felicia Chillak or Zalmay Mayar by counter affidavit have not been filed, the Court is of the opinion that these affidavits are of such a general nature and are so lacking in specifics as to be insignificant when compared to the record made at the trial. The more detailed affidavit of Hassainkhail was contradicted by Riaz's earlier affidavit.

Accordingly, the Court concludes that the defendant is not entitled to a new trial under the controlling case law as enunciated in *Mills v. United States, supra; United States v. Zane, supra; United States v. Trapnell, supra;* and *United States ex rel. Rice v. Vincent, supra.*

The Motion for New Trial is DENIED.

The Clerk is DIRECTED to send a copy of this Order each to the United States Court of Appeals for the Fourth Circuit, defendant's counsel, and the United States Attorney.