**UNITED STATES of America**

v.

**Darren CUSTIS.**

**Crim. No. S 91–0334.**

United States District Court,
D. Maryland.

March 16, 1992.

Richard D. Bennett, U.S. Atty., Robert E. Sims and Thomas DiBiagio, Asst. U.S. Attys., Baltimore, Md., for plaintiff.

Fred Warren Bennett, Federal Public Defender, Tyler C. Johnston and Mary French, Asst. Federal Public Defenders, Baltimore, Md., for defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge.

This criminal case under the Armed Career Criminal Act, 18 U.S.C. § 924(e) is before the Court on issues regarding the sentencing of Mr. Darren Custis and his motion for new trial.

First, Mr. Custis has challenged the constitutional validity of his prior convictions, arguing, *inter alia,* that he was denied effective assistance of counsel, as set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as to two of his prior convictions. Mr. Custis contends that these convictions cannot be used to sentence him as a thrice-convicted armed career criminal. Thus, before addressing the arguments on the merits as to the various points raised by counsel going to the validity of the prior convictions, this Court examined the circumstances in which collateral attack should be allowed on prior convictions under 18 U.S.C. § 924(e). From its analysis, this Court now concludes that, with one narrow possible exception, collateral attacks on prior convictions should not be entertained at sentencing, for reasons that will be explained herein.

This opinion will also address the defendant's motion for new trial, based upon newly discovered evidence concerning the veracity of two Government witnesses. Specifically, two of the police officers who testified at the suppression hearing and at trial, and whose testimony constituted the principal evidence in support of Mr. Custis' conviction for possession of a firearm, have been indicted for perjury arising in the course of their work in an unrelated case. The indictments were filed after the trial in

this case, but before sentencing. The defendant argues that this new information concerning the officers seriously undermines confidence in the jury's guilty verdict on the firearms count in the present case. The Government, in turn, rejects the notion that a new trial should be granted upon these grounds. Because this Court finds that the law and the equities in this case support the grant of a new trial, defendant's new trial motion will be granted, as explained further below.

*Factual Background*

Mr. Custis was tried by jury in November of 1991 on a three-count indictment charging him with (1) possessing, with the intent to distribute, cocaine, (2) carrying a firearm in connection with a drug trafficking offense, and (3) possessing a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year. At trial, three Baltimore City police officers testified on behalf of the Government. Two of the officers, Christopher Wade and John Mohr, originally arrested the defendant on state narcotics and firearms charges. As part of "Operation Triggerlock," a federal prosecution was undertaken pursuant to 18 U.S.C. §§ 922 and 924. A third officer testified regarding the defendant's purported admissions concerning the firearm. During the trial, Mr. Custis testified on his own behalf, admitting to possession of a small amount of cocaine for his personal use, but denying ownership and/or possession of the gun. After a three day trial, the defendant was convicted of the lesser-included offense of possession of cocaine, as well as the felon-in-possession of a firearm charge, in violation of 18 U.S.C. § 922(g) and § 924(e)(1), but was acquitted of the charge of carrying a firearm during the commission of a drug trafficking crime.

In February 1992, as the result of an investigation into an unrelated, earlier case conducted by the Baltimore City State's Attorney's Office, Officers Wade and Mohr were indicted for misdemeanor perjury, arising from allegedly false statements in applications for search warrants [1]. Subsequent to the indictment, defense counsel sought to obtain by subpoena all records regarding the state's investigation of these officers, as well as the officers' personnel records.[2] The purpose of the subpoenas was to determine whether or not those records contained information relevant to a motion for new trial. This Court subsequently quashed the subpoenas, pursuant to an Order requiring the prosecutor to submit an affidavit stating that, upon review, the records contained no *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), exculpatory information (including impeachment information) extant before the trial of Mr. Custis. The Court received the requisite affidavit prior to the sentencing hearing, and finds, on the basis of that affidavit and its attachments, that there was no violation of *Brady*[3] in the present case.

*Collateral Attack on Prior Convictions Used to Calculate Armed Career Criminal Status*

The Government here requests application of the Armed Career Criminal enhancement of 18 U.S.C. § 924(e) to Mr. Custis. The defendant must have been convicted of three prior violent felonies to trigger the enhancement, which raises the penalty for the felon-in-possession of a firearm charge under § 922(g) from a maximum of ten years to a minimum of fifteen years, with a maximum of life. 18 U.S.C. § 924(e)(1). Under U.S.S.G. § 4B1.4, the minimum possible guideline sentence is 188 months. Unlike the statutory scheme for enhancement of sentences in drug cases, the Arm-

---

1. Perjury, although a misdemeanor under Maryland's common law classification of offenses, is punishable by 10 years' imprisonment. Md. Ann.Code of 1957 art. 27, § 439 (1992).

2. Prior to trial, the defendant had also moved *ex parte* for subpoenas for the police officers' personnel records. Those motions were denied, on the ground that the defendant had presented no particularized showing justifying the issuance of those subpoenas.

3. No information was contained in the files requested by defense counsel prior to trial that would have been exculpatory to the defendant under *Brady*.

ed Career Criminal Act provides no statutory right to challenge prior convictions relied upon by the Government for enhancement. *Compare* 18 U.S.C. § 924(e) *with* 21 U.S.C. § 851. Thus, the only relevant question is the extent to which any other statute, the Constitution itself, or case law gives the defendant such a right.

The only statute conceivably relevant is 18 U.S.C. § 3661, which provides simply that the Court may consider any relevant information at sentencing. That statute does little to shed light upon the present situation.

■ The Constitution, as interpreted by the Supreme Court, appears to prohibit use of prior convictions to enhance sentences only where the convictions are void because the defendant was deprived of the opportunity to retain counsel, or, being indigent, was deprived of the opportunity to have counsel appointed. In other words, the conviction cannot be used to enhance only if it was obtained in violation of the rule in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *See United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). (For reasons that follow, even this narrow prohibition may not apply in § 924(e) cases.)

■ This Court knows of no binding authority on the point from the United States Court of Appeals for the Fourth Circuit. Other circuits have addressed the issue of collateral attack upon prior convictions at sentencing and have allowed defendants to challenge prior convictions on constitutional grounds other than deprivation of the right to counsel, without specifically addressing the origin and nature of the "right" to raise the challenge, but simply allowing it to proceed. *See, e.g., United States v. Day*, 949 F.2d 973, 980–81 (8th Cir.1991). This Court's analysis of *Day* and the cases collected therein, though, leads to the conclusion that, to the extent the cases have extended the rule of *Tucker* and *Burgett* to entertain collateral attacks in cases not involving the frank deprivation of the right to any representation by counsel, they are unsound.

For example, the passage from *Tucker*, 404 U.S. at 448–49, 92 S.Ct. at 592–93, relied upon in *Day*, 949 F.2d at 981, simply does not extend to guilty pleas in which counsel has incompetently performed; rather, *Tucker* concerned itself only with defendants who had been cut off from any right to counsel at all. A guilty plea that can be attacked on ineffective representation grounds is very different from a situation where the defendant never was afforded the right to see a lawyer at all, but was nonetheless convicted. It is only the latter situation that is so fundamentally unfair that a resulting conviction cannot be used for enhancement later under *Tucker*. *See United States v. Graves*, 554 F.2d 65, 82 (3d Cir.1977), *cited with approval in Grandison v. Warden*, 580 F.2d 1231, 1240–41 (4th Cir.1978), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1239, 59 L.Ed.2d 469 (1979).

Furthermore, and most importantly, the decision in *Lewis v. United States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), should be read as foreclosing *any* collateral attack, whether before conviction on the § 924(e) underlying gun offense or at sentencing for it, on a predicate conviction, even where the predicate conviction could otherwise be challenged under *Tucker* and *Burgett*. Although *Lewis* did not directly involve § 924(e), it construed a gun control statute (since repealed) essentially *in pari materia* with § 924(e)'s base offense (18 U.S.C. § 922(g)), *viz.*, 18 U.S.C.App. former § 1202(a). If, as it appears, a conviction void under *Tucker* could be used as a predicate for convicting someone of the substantive firearms offense under *Lewis, a fortiori* it can be considered at sentencing on that offense, immune from collateral attack. This Court recognizes that *Lewis*, 445 U.S. at 67, 88 S.Ct. at 922, distinguished *Burgett* but that distinction is neither logically supportable nor persuasive. If the "void" prior conviction is "reliable" enough to support indictment and conviction, it is logically "reliable" enough to be a predicate for an enhanced sentence.

Additionally, this Court's basis for precluding collateral attack at sentencing (on grounds other than, possibly, total deprivation of counsel) includes the persuasive arguments made by Judge Wilkinson in his dissent in *United States v. Jones*, 907 F.2d 456 (4th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 683, 112 L.Ed.2d 675 (1991). Judge Wilkinson's cogent dissent need not be reiterated here, save to point out that, if the scope of collateral review of state court convictions in a federal sentencing proceeding extends to any and all constitutional flaws, then the sentencing court will most likely be conducting a plenary collateral review of up to three predicate convictions in every sentencing under § 924(e), without any state court post-conviction record, and without the usual constraints on collateral review, such as waiver, bypass, cause, prejudice, and exhaustion. *See., e.g., Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Such a situation is folly, for the reasons stated by Judge Wilkinson in dissent in *Jones*, 907 F.2d at 470–84.

Finally, a word about *Jones* itself. *Jones* is not binding authority in this case, because it involved only construction and application of a (since repealed) provision of the Sentencing Guidelines, and it did not announce a supervisory or constitutional rule of general application in federal sentencings; neither does this Court consider *Jones* persuasive authority in this situation, for reasons amply stated above.

Thus, because defense counsel cannot establish that Mr. Custis, in his prior convictions, was denied the right to be represented by counsel (in fact, he was so represented), there is no occasion for any collateral review of those convictions at all during the sentencing proceedings. This Court is not, for reasons stated above, concerned with "ineffective representation" claims under the Sixth Amendment, Fourth Amendment claims, or claims of any sort other than the outright deprivation of the right to be represented under *Gideon.* Even if a predicate conviction was completely uncounseled, it is the opinion of the Court that *Lewis* would still bar collateral attack upon it, but that is a question upon which judgment need not be rendered in this case.

*Motion for New Trial*

Federal Criminal Rule 33 delineates the standard for a motion for new trial and provides, in pertinent part, that "[t]he court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice."

 The Government, in its opposition to defendant's motion, correctly points out the general rule in this Circuit that new evidence going to the credibility of witnesses normally does not justify a new trial. *See, e.g., United States v. Stockton*, 788 F.2d 210, 220 (4th Cir.), *cert. denied*, 479 U.S. 840, 107 S.Ct. 147, 93 L.Ed.2d 89 (1986). The present case, however, goes well beyond the normal one, where some impeaching tidbit is turned up after trial. Indeed, this case is much closer to *United States v. Atkinson*, 429 F.Supp. 880 (E.D.N.C.1977). There, the court noted:

> Newly discovered evidence that merely goes to impeach the credibility of a prosecution witness does not ordinarily warrant the granting of a new trial, ... but in some circumstances the newly discovered evidence, although impeaching[,] is sufficiently important in the ascertainment of the truth and in the interests of justice that a new trial should be ordered.

*Id.* at 885 (citations omitted). In the present case, this Court's confidence in the outcome of this trial is so severely undermined by the indictment of the two key witnesses for perjury that, in fairness and justice, the verdict cannot stand.

Officers Wade and Mohr were the arresting officers in the present case; the jury's belief in their testimony regarding Mr. Custis' possession of the firearm was, in the Court's opinion, essential to a finding of guilt. Of course, during the new trial, the defendant cannot introduce evidence of the officers' alleged perjury under Fed.R.Evid. 609 unless and until the officers have actually been convicted of that offense. Under Fed.R.Evid. 608(b), however, the underlying circumstances would be open to cross-

examination, subject, of course, to Rule 403 and Fifth Amendment constraints. In the discretion of this Court, the full extent of the officers' misconduct, if any [4], could be addressed during cross-examination. The presence of reasonable doubt in the minds of the jury may be very much affected by knowledge of the conduct of these officers, and a different verdict may result. *See Atkinson*, 429 F.Supp. at 887. The Court has considered that another officer testified as to allegedly incriminating oral statements made by the defendant the morning after his arrest, before he had seen a magistrate, and after he had been held in custody all night. This questioning violated a general order of the Police Department, and the whole testimony of that officer is such that it does little to repair the Court's shaken faith in the integrity of the verdict.

It is a sad day when the Government's key law enforcement witnesses in a criminal case stand indicted for perjury. While it may be true that the defendant is in fact guilty, our system of justice is designed to insure him the right to a fair trial, where the jury knows all the relevant facts, especially when the credibility of arresting officers is at issue. In order to preserve that right, a new trial must be granted here in the interests of fairness and justice.[5]

For the reasons outlined above, an order will be entered separately, *granting* defendant's motion for new trial.

---

**4.** Of course, the Court does not purport to have detailed knowledge of either the factual basis of the indictments or whether the charges are well-grounded in fact.

**5.** The Court is especially cognizant of the decrease in public confidence in the judiciary of England occasioned by recent revelations of police perjury during the 1970's, resulting from attempts to control the Irish Republican Army ("I.R.A."). This crisis of confidence in the independence and integrity of the English courts has led to demands for radical reform of the very mother of all common law courts. Trust in the English judiciary that had been built up by accretion—slowly over hundreds of years—is now going right out the window due to suspicion of police perjury. This Court cannot and will not tolerate even the hint of a like erosion of public confidence in the judiciary of this country. Sentencing Guidelines or no Sentencing Guidelines, Armed Career Criminal Act or no Armed Career Criminal Act, War on Drugs or No War on Drugs, Operation Triggerlock or no Operation Triggerlock, the basic principle underlying this Court's judgments must be to do that which is fair, just, and right.