STATE OF NORTH CAROLINA v. ALFRED MILTON RIVERA

No. 1A98

(Filed 9 April 1999)

**1. Evidence— hearsay—state of mind exception—conversation with codefendant—plan to frame defendant**

In a prosecution of defendant for two first-degree murders based upon premeditation and deliberation and the felony murder rule, testimony by a prison inmate about a conversation he had with a codefendant in jail in which the codefendant claimed to have "two dudes" who were going to say it was defendant who committed the murders was admissible under the state-of-mind exception to the hearsay rule and was improperly excluded by the trial court. The testimony tended to show the codefendant's intent to direct or assist the two men in executing the plan to identify defendant as the shooter and was thus admissible as evidence of the codefendant's then-existing intent to engage in a future act.

STATE v. RIVERA

[350 N.C. 285 (1999)]

## 2. Criminal Law— prosecutor's closing argument—disparagement of opposing counsel—impropriety

In a prosecution for two first-degree murders in which testimony by the obstetrician of defendant's girlfriend that he examined her on the afternoon of the murders conflicted with her testimony that defendant spent the entire day of the murders at her home and that she and defendant never left the house, the prosecutor's statement during closing argument that defense counsel "displayed one of the best poker faces as we introduced [the obstetrician] in the history of this courthouse" was an improper comment that disparaged opposing counsel in violation of the standard of "dignity and propriety" required of all trial counsel by Rule 12 of the General Rules of Practice for the Superior and District Courts. The trial court's remark, after overruling defendant's objection, that the jury would decide the case based upon the evidence and not the personalities of the lawyers was insufficient to cure this impropriety.

## 3. Homicide— felony murder—specific intent for underlying felonies—*Blankenship* rule applicable

Because two murders with which defendant was charged occurred after the decision of *State v. Blankenship*, 337 N.C. 543 (1994), but before the nonretroactive decision of *State v. Barnes*, 345 N.C. 184 (1997), the acting-in-concert rule applied in Blankenship applies to defendant's trial. Therefore, the trial court must charge the jury in defendant's new trial that before it can render a verdict of guilty of felony murder on the basis of defendant's acting in concert with regard to the underlying specific intent felonies of armed robbery and kidnapping, it must first find that defendant himself possessed the requisite specific intent.

Justices MARTIN and WAINWRIGHT did not participate in the consideration or decision of this case.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing two sentences of death entered by Eagles, J., on 24 October 1997 in Superior Court, Forsyth County, upon jury verdicts finding defendant guilty of two counts of first-degree murder. Heard in the Supreme Court 17 November 1998.

STATE v. RIVERA

[350 N.C. 285 (1999)]

*Michael F. Easley, Attorney General, by Jill Ledford Cheek, Assistant Attorney General, for the State.*

*J. Clark Fischer for defendant-appellant.*

MITCHELL, Chief Justice.

On 7 October 1996, defendant was indicted for two counts of first-degree murder. Defendant was tried capitally at the 6 October 1997 Criminal Session of Superior Court, Forsyth County. The jury found defendant guilty of both counts of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. Following a capital sentencing proceeding, the jury recommended a sentence of death for each first-degree murder conviction. The trial court sentenced defendant accordingly.

The State's evidence tended to show, *inter alia*, that on the evening of 22 March 1996, defendant, Alfred Milton Rivera, also known as "Heavy," and his codefendants, Milton "Shorty" Hauser, JaHen Marlin, and Antonio "Sunshine" Bryant, went to the apartment of Michael Nicholson and his stepbrother James Smith to rob them. Bryant, Nicholson, and defendant were drug dealers, and Nicholson allegedly owed Bryant more than $2,000 on a drug debt. While inside the apartment, defendant shot both Nicholson and Smith in the head at close range. Nicholson was dead when police arrived on the scene, and Smith died in the hospital shortly thereafter.

Marlin and Hauser testified against defendant at his capital trial. According to their testimony, they entered the victims' apartment with defendant on the evening of 22 March 1996. Bryant waited for them outside in a minivan the four men had "rented" in exchange for crack cocaine. Shortly thereafter, defendant and Marlin pulled guns on the victims in the kitchen, and Hauser began to tie Nicholson's hands with a belt. Nicholson was on his knees begging the men to stop when defendant shot him in the back of the head at close range. Marlin and Hauser attempted to leave, but defendant stopped them. Smith tried to escape into the back of the apartment, but Marlin struck him in the head with a gun. Defendant then forced Smith into a back bedroom to search for something, presumably drugs. Smith ransacked the room while defendant screamed obscenities at him. Finally, defendant shot Smith in the head at point-blank range. Marlin, Hauser, and defendant then returned to the minivan, and the four codefendants drove away. Several prosecution witnesses testified that all four codefendants had been in Nicholson and Smith's

apartment at least twice on the afternoon of 22 March 1996 and that defendant was one of the men who had entered prior to the shootings.

The theory of the defense at trial was that Bryant, Hauser, and Marlin committed the murders with no involvement by defendant. Defendant presented alibi evidence for the entire day of 22 March 1996. Defendant also presented the testimony of John Howard Brown, an inmate at Central Prison, regarding a conversation he allegedly overheard between Hauser and Marlin. According to Brown's testimony, both men acknowledged that defendant was not present when the victims were killed but that defendant would have to "take the fall" for the murders because they did not like him and because defendant was from New York.

In addition, defendant called James Calvin Segers, an inmate in federal prison in Missouri, to testify about a conversation he had with Bryant in the Forsyth County jail in which Bryant claimed to have "two dudes" who were going to say it was defendant who committed the murders. Following a *voir dire*, the trial court concluded that Segers' testimony regarding the conversation with Bryant was inadmissible hearsay. The trial court also weighed the probative value of the testimony against the danger of unfair prejudice under Rule 403 of the North Carolina Rules of Evidence and further concluded that the testimony was likely to confuse the issues needlessly and should thus be excluded. N.C.G.S. § 8C-1, Rule 403 (1997).

[1] By an assignment of error, defendant contends that the trial court erred by prohibiting him from introducing Segers' testimony about Bryant's plan to frame defendant for the murders. We agree. Defendant argues that Segers' testimony concerning Bryant's statements is admissible under exceptions to the hearsay rule: specifically, exceptions provided for in Rules 803(3) (statements of a declarant's then-existing state of mind), 804(b)(3) (statements against penal interest), and 804(b)(5) (residual or "catchall" exception). Without deciding whether the testimony is admissible as a declaration against penal interest or under the residual or "catchall" exception, we conclude that the testimony is admissible under the state-of-mind exception.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (1997). In general, hearsay evidence is not admissible. *State v. Wilson*, 322

N.C. 117, 367 S.E.2d 589 (1988). However, Rule 803(3) of the North Carolina Rules of Evidence allows the admission of hearsay testimony into evidence if it tends to show the declarant's then-existing state of mind. N.C.G.S. § 8C-1, Rule 803(3) (1997).

Defendant in the case *sub judice*, relying on *State v. Sneed*, 327 N.C. 266, 393 S.E.2d 531 (1990), argues that the excluded testimony is admissible as evidence of Bryant's then-existing state of mind under Rule 803(3). In *Sneed*, the defendant was charged with the first-degree murder of a service-station owner. On *voir dire*, the defendant sought to introduce hearsay testimony which indicated that a third party had expressed his intention to rob the service station where the victim was killed. The State argued that the proffered testimony was inadmissible hearsay. This Court concluded that the excluded testimony was relevant and admissible because " 'Rule 803(3) allows the admission of a hearsay statement of a then-existing intent to engage in a future act.' " *Id.* at 271, 393 S.E.2d at 534 (quoting *State v. McElrath*, 322 N.C. 1, 17-18, 366 S.E.2d 442, 451 (1988)).

In this case, the following exchange occurred during defendant's *voir dire* of Segers:

Q. What did he [Bryant] tell you about the murders?

A. I said, Sunshine, I just talked to somebody and they told me that you knew about those murders that you were talking to me about a gun for or something. He said, Pop, I'm up on that, but it ain't going to be shit to that because I got these two dudes here and if anything go down, they going to say it was this dude named Heavy. I said, Heavy who? He said, The guy you remember seeing on that green motorcycle with me out by Lakeside that time. I said, Yeah, I saw him then, and I saw him talking to you down by 15th Street. He said, Well, these dudes said we going to lay on Heavy everything because those guys from New York, they do stuff like that, and people, they will believe he done that. Would do that.

Q. Did you ask Mr. Bryant if Heavy had anything to do with it?

A. Yes. I said, I thought you told me when you asked him about a gun he said he didn't have nothing to do with that. He said, Pop, you know he didn't say, but we got it taken care of if anything come up. It ain't nothing up on it right now. He said, I'm trying to get out of this what I'm into now, is when he told me that.

The State argues that the Rule 803(3) exception is inapplicable here because Bryant's purported statements do not establish his intent to engage in a future act. Rather, the statements, at best, convey Bryant's belief that two other men intended to identify defendant as the shooter. Furthermore, because defendant was tried for each homicide on a theory of felony murder, the central factual issue at trial was simply whether defendant took part in the actions that led up to the murders, regardless of who pulled the trigger. Therefore, the State argues, even if Segers' testimony had been allowed, Bryant's alleged statements would not have established that defendant was absent from the scene when the killings took place. We disagree.

Bryant's alleged statements that "*I* got these two dudes here" (emphasis added) who were to "lay on [defendant] Heavy everything" tend to show Bryant's intent to direct or assist the two men in executing the plan. Thus, Segers' testimony concerning Bryant's statements was admissible as evidence of Bryant's then-existing intent to engage in a future act. Moreover, the testimony of Segers would have added weight and credibility to Brown's testimony, which tended to show that defendant did not take part in the robbery or homicides. The credibility of Segers and Brown as witnesses and the weight to be given their testimony are issues for the trier of fact. Based upon the foregoing, we conclude that the trial court erred to defendant's prejudice by excluding Segers' testimony regarding the alleged conversation with Bryant. Therefore, defendant is entitled to a new trial.

[2] By another assignment of error, defendant claims that during the State's closing argument at the trial, the prosecutor made improper comments that amounted to a personal characterization of defense counsel. Although this issue is not determinative in light of the aforementioned error requiring a new trial, we nonetheless note our agreement with defendant that the prosecutor made an improper comment.

At trial, defendant's girlfriend, Lakisha Daniels, testified that defendant spent the entire day of 22 March 1996 at her home and that she and defendant never left the house. However, Ms. Daniels' obstetrician, Dr. Steve Bissett, testified that he examined Ms. Daniels on the afternoon of 22 March 1996. Furthermore, medical records indicated that laboratory tests had been performed on Ms. Daniels that afternoon. During his closing argument, the prosecutor remarked, over defendant's objection, that defense counsel "displayed one of

the best poker faces as we introduced Dr. Bissett in the history of this courthouse." Defendant contends that this comment by the prosecutor improperly implied that defense counsel had personal knowledge of both the validity and the damaging nature of the State's evidence concerning Ms. Daniels' whereabouts on 22 March 1996 and was attempting to conceal this knowledge by not reacting to the presentation of Dr. Bissett's testimony.

It is well established that the jury arguments of trial counsel are left largely to the control and discretion of the trial court, and counsel will be granted wide latitude in the argument of hotly contested cases. *State v. Robinson*, 346 N.C. 586, 488 S.E.2d 174 (1997). Nevertheless, "a trial attorney may not make uncomplimentary comments about opposing counsel, and should 'refrain from abusive, vituperative, and opprobrious language, or from indulging in invectives.' " *State v. Sanderson*, 336 N.C. 1, 10, 442 S.E.2d 33, 39 (1994) (quoting *State v. Miller*, 271 N.C. 646, 659, 157 S.E.2d 335, 346 (1967)); *see also* Gen. R. Pract. Super. and Dist. Ct. 12, 1999 Ann. R. N.C. 10 ("All personalities between counsel should be avoided. The personal history or peculiarities of counsel on the opposing side should not be alluded to. Colloquies between counsel should be avoided.").

Here, after overruling defendant's objection, the trial court remarked that the jury would decide the case based upon the evidence and not the personalities of the lawyers. However, we conclude that the trial court's comments were not enough. Although the comment of the prosecutor in this case was not extreme, it did not meet the standard of "dignity and propriety" required of all trial counsel by Rule 12 of the General Rules of Practice for the Superior and District Courts. Gen. R. Pract. Super. and Dist. Ct. 12, 1999 Ann. R. N.C. 10 ("Counsel are at all times to conduct themselves with dignity and propriety."). We have viewed with concern the apparent decline in civility in our trial courts. This Court shall not tolerate, and our trial courts must not tolerate, comments in court by one lawyer tending to disparage the personality or performance of another. Such comments tend to reduce public trust and confidence in our courts and, in more extreme cases, directly interfere with the truth-finding function by distracting judges and juries from the serious business at hand. We admonish our trial courts to take seriously their duty to insure that the mandates of Rule 12 are strictly complied with in all cases and to impose appropriate sanctions if they are not.

**STATE v. RIVERA**

[350 N.C. 285 (1999)]

**[3]** Defendant next argues that the trial court committed plain error by instructing the jury that defendant could be convicted of felony murder based upon the specific intent of another as to the underlying felonies of robbery with a dangerous weapon and kidnapping, contrary to this Court's holdings in *State v. Blankenship*, 337 N.C. 543, 447 S.E.2d 727 (1994), and its progeny. *See, e.g., State v. Straing*, 342 N.C. 623, 466 S.E.2d 278 (1996). Because we are granting defendant a new trial on other grounds, we need not address this argument. However, because of the likelihood of this issue arising at a new trial, we choose to address defendant's argument.

In *Blankenship*, this Court held that when an accused is charged with acting in concert in relation to a specific-intent crime, the prosecution must prove that each individual defendant possessed the requisite *mens rea* to commit the specified crime. 337 N.C. at 558, 447 S.E.2d at 736. Although *Blankenship* was subsequently overruled by this Court in *State v. Barnes*, 345 N.C. 184, 481 S.E.2d 44 (1997), *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 134, and *cert. denied*, —— U.S. ——, 140 L. Ed. 2d 473 (1998), this case is controlled by *Blankenship*. We indicated in *Barnes* that our decision with respect to the rule of acting in concert in that case would not be applied retrospectively. *Id.* at 234, 481 S.E.2d at 72. Because the crimes with which defendant was charged occurred after our decision in *Blankenship* but before our decision in *Barnes*, the acting-in-concert rule applied in *Blankenship* also applies to the instant case. Therefore, the trial court must charge the jury at defendant's new trial that before it can properly render a verdict of guilty on the basis of defendant's acting in concert with regard to any of the specific-intent crimes, it is first required to find that defendant himself possessed the requisite specific intent.

For the reasons stated herein, we hold that the trial court erred by excluding admissible testimony and that defendant is entitled to a new trial.

NEW TRIAL.

Justices MARTIN and WAINWRIGHT did not participate in the consideration or decision of this case.