**STATE v. LUCAS**

[138 N.C. App. 226 (2000)]

STATE OF NORTH CAROLINA v. WILLIAM RASHAD LUCAS, Defendant

No. COA99-24

(Filed 6 June 2000)

### Aiding and Abetting— burglary—kidnapping—*Blankenship* rule—specific intent

Since the crimes with which defendant was charged occurred prior to the *Barnes* decision and *Blankenship* governs, the trial court committed reversible error by failing to include within its jury charge the substance of defendant's written instruction, requiring a showing of specific intent for the convictions of first-degree burglary and second-degree kidnapping, because: (1) defendant's conviction for a specific intent crime under an aiding and abetting theory would be improper unless the State proved beyond a reasonable doubt that he personally possessed the requisite mens rea to commit the specified crime; and (2) the trial court's use of the phrases "knowingly encouraged and/or aided" did not adequately convey the requisite specific intent concept as expressly requested by defendant in writing.

Appeal by defendant from judgments entered 24 February 1998 by Judge Wiley F. Bowen in Harnett County Superior Court. Heard in the Court of Appeals 25 October 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General K.D. Sturgis, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Danielle M. Carman, for defendant-appellant.*

JOHN, Judge.

Defendant appeals judgments entered upon convictions by a jury of second-degree kidnapping, first-degree burglary and possession of a weapon of mass destruction. We award a new trial as to the kidnapping and burglary offenses.

The State's evidence at trial tended to show the following: On 18 January 1997, Dale McLean (McLean), his girlfriend Gwendolyn Morrison (Morrison), his ten year old daughter Chasity, and his six

year old son Junior, were together at McLean's trailer home (the trailer) in Harnett County. At approximately 8:00 p.m., McLean heard a knock at the back door, looked out a window, and saw Jimmy Lawrence (Lawrence), Morrison's former boyfriend. Morrison stated she would "handle it," and exited the trailer to speak with Lawrence. Lawrence insisted that Morrison come with him and, upon her refusal, pointed a nine millimeter pistol at her. Morrison glanced around and observed defendant standing silently near the trailer with a sawed-off shotgun resting across his stomach. Morrison told Lawrence she "didn't want no trouble" and would get her clothes and leave with him.

Morrison thereupon entered the trailer, but Lawrence "busted his way" in as she closed the door and pushed past her. McLean, who had been in the bedroom, confronted Lawrence in the hallway. The latter pointed his pistol at McLean and pulled the trigger, but the weapon failed to discharge. On a second attempt, the gun fired and the shot struck McLean in the head. McLean fell to the floor and Lawrence continued to shoot at him from point-blank range.

When Lawrence ceased firing, Morrison noticed defendant "standing in the door," holding the sawed-off shotgun. Lawrence threatened Morrison, indicating he would kill her if she refused to accompany him, and "grabbed [her] by the arm and took [her] out to [his] truck." According to Morrison, defendant, who was driving, chastised Lawrence, asserting Lawrence "should have killed her too because she's going to tell it." The group transferred into defendant's automobile at the residence of Lawrence's father. Defendant then drove to a local hotel and waited in the vehicle with Morrison while Lawrence registered.

Shortly after the three entered the room secured by Lawrence, the latter asked defendant to obtain some clothes for Morrison. As defendant left to comply, Morrison noted defendant's sawed-off shotgun remained on a bed. Within forty-five minutes, defendant returned with clothes for Morrison and departed a second time. Lawrence then sexually assaulted Morrison. Eventually, Lawrence vacated the hotel in the company of his father. Morrison telephoned her cousin, who picked Morrison up, and then notified police.

In her testimony, Chasity identified defendant as the man she had seen with Lawrence on 18 January 1997. Chasity indicated defendant had carried a "long gun" and was standing "half-inside and half-outside the door" when Lawrence shot McLean. She also related that

both men were wearing black pants, black coats and black base-ball hats.

Chasity stated she telephoned McLean's mother, Eloise Swann (Swann). Swann testified she went to the trailer following the call and that Chasity told her, "it was two men." In Chasity's statement to police at 9:20 p.m. on 18 January 1997, she reported that "the men came in and both had guns."

In a 3:30 p.m. statement to police on 19 January 1997, defendant initially maintained he had been riding around with a friend between 6:00 and 9:00 p.m. on the previous day. When Special Agent Sam Pennica told defendant Lawrence had implicated defendant, the latter modified his statement. Defendant then related he drove with Lawrence to an unfamiliar trailer on 18 January 1997, but that he "did not know . . . why Lawrence wanted to go to the trailer." Defendant insisted he possessed no weapon and was not aware Lawrence was carrying a gun. According to defendant, he stood near the trailer stairs while Lawrence entered and returned to the vehicle to wait for Lawrence upon hearing shots being fired. Defendant acknowledged that he drove Morrison and Lawrence to the home of Lawrence's father, but maintained he simply transported the pair to that location and thereafter spent the night at the residence of his girlfriend.

At trial, defendant testified that he rode with Lawrence in the lat-ter's truck to pick up a female friend. He noticed Lawrence had a gun and placed his shotgun in the truck upon Lawrence's explanation that, "you never know. Anything can happen." Defendant stated he waited by the trailer steps while Lawrence entered and, upon hear-ing shots, looked into the doorway and saw Lawrence struggling with someone. Defendant thereupon ran to the truck and was soon joined by Morrison and Lawrence. Defendant complied with Lawrence's directive to drive to the home of Lawrence's father and change vehicles.

Lawrence then "begg[ed]" defendant to locate a hotel. Defendant did so and waited in the vehicle with Morrison while Lawrence regis-tered. Defendant agreed to Lawrence's request that defendant hide the nine millimeter pistol, but insisted he did not know what had hap-pened to his shotgun. Defendant further testified he left the hotel, but that Lawrence paged him within three minutes and requested that he obtain clothes for Morrison. Defendant borrowed some clothes from his girlfriend, brought them to the hotel and returned to her resi-dence, where he hid the nine-millimeter pistol.

The jury returned verdicts of guilty of second-degree kidnapping and first-degree burglary upon the theory of aiding and abetting, as well as guilty of possession of a weapon of mass destruction. The trial court entered judgment 24 February 1998 and imposed the following consecutive sentences:

1) 97 CRS 1007—Possession of a weapon of mass destruction: minimum of 16 months and maximum of 20 months imprisonment;

2) 97 CRS 735—Second degree kidnapping: minimum of 85 months and maximum of 99 months, including a 60 month firearm penalty enhancement;

3) 97 CRS 1008—Burglary in first degree: minimum of 124 months and maximum of 146 months, including a 60 month firearm penalty enhancement.

Defendant appeals.

Initially, we note defendant has advanced in his appellate brief only six of his thirty-two specified assignments of error: twenty-one, twenty-two, twenty-three, twenty-six, twenty-seven and twenty-nine. Accordingly, we do not address defendant's remaining assignments of error. *See* N.C.R. App. P. 28(b)(5) (assignments of error not set forth in an appellant's brief are deemed abandoned).

In his first argument, defendant attacks the trial court's rejection of his request at trial for a jury instruction, pursuant to *State v. Blankenship*, 337 N.C. 543, 447 S.E.2d 727 (1994), *overruled by State v. Barnes*, 345 N.C. 184, 481 S.E.2d 44 (1997), *cert. denied*, 522 U.S. 876, 139 L. Ed. 2d 134 (1997), and *cert. denied*, 523 U.S. 1024, 140 L. Ed. 2d 473 (1998), regarding specific intent relative to the charges of first degree burglary and second degree kidnapping. Defendant submitted in writing the following proposed jury instruction:

That the defendant . . . intended to commit (the felony). That is he had the specific intent to (name elements of felony). It is not sufficient that the State prove that [Lawrence] intentionally committed (the felony); rather the State must prove beyond a reasonable doubt that [defendant] himself, had a specific intent to commit (the felony).

The trial court denied the request, and overruled defendant's objection to the following instruction:

Now, as to aiding and abetting in the charge of burglary and first- or second-degree kidnapping, a person may be guilty of a crime although he personally does not do any of the acts necessary to constitute that crime. A person who aids and abets another to commit a crime is guilty of that crime. . . . [T]o find the Defendant guilty of another crime because of aiding and abetting the State must prove generally three elements beyond a reasonable doubt: First, that the crime was committed by . . . Lawrence. Second, that the Defendant knowingly encouraged or aided [Lawrence] to commit that crime. And third, that the Defendant's actions or statements caused or contributed to the commission of the crime by [Lawrence].

[A]s to burglary by aiding and abetting I charge that if you find from the evidence beyond a reasonable doubt that . . . Lawrence committed burglary [which is defined as "the breaking and entering of the occupied dwelling house of another without his consent in the nighttime with the intent to commit a felony, and in this case the felony of murder,"] and that the Defendant was actually present at the time the crime was committed and that the Defendant knowingly encouraged or aided [Lawrence] to commit the crime and that in so doing the Defendant's actions or statements caused or contributed to the commission of the crime by [Lawrence], your duty would be to return a verdict of guilty of burglary by aiding and abetting.

. . . .

As to second-degree kidnapping [which is defined as the "unlawful confining, restraining or removal of a person from one place to another without the person's consent for the purpose of doing serious bodily harm or terrorizing that person"] by aiding and abetting, I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date [Lawrence] committed second-degree kidnapping and that the Defendant was actually present at the time the crime was committed and that the Defendant knowingly encouraged and aided [Lawrence] to commit the crime and that in so doing the Defendant's actions or statements caused or contributed to the commission of the crime by [Lawrence].

It is well established that "[w]hen a defendant makes a timely written request for an instruction that is correct in law and supported by the evidence," *State v. Dodd*, 330 N.C. 747, 753, 412 S.E.2d 46, 49

(1992), the trial court is required to relate "the substance of that instruction," *id.*, and that failure to do so constitutes reversible error, *State v. Spicer*, 285 N.C. 274, 284, 204 S.E.2d 641, 647 (1974). However, when the trial court's charge "adequately convey[s] the substance of defendant's proper request[,] no further instructions [a]re necessary." *State v. Green*, 305 N.C. 463, 477, 290 S.E.2d 625, 633 (1982).

In *Blankenship*, our Supreme Court held that

when an accused is charged with acting in concert in relation to a specific-intent crime, the prosecution must prove, [and there must be an instruction relating,] that each individual defendant possessed the requisite *mens rea* to commit the specified crime.

*State v. Rivera*, 350 N.C. 285, 292, 514 S.E.2d 720, 724 (1999) (citing *Blankenship*, 337 N.C. at 558, 447 S.E.2d at 736); *see Blankenship*, 337 N.C. at 558, 447 S.E.2d at 736 (jury instructions which failed to include requirement that each defendant prosecuted under acting in concert theory must have possessed the requisite intent to commit the charged specific intent crime deemed erroneous).

Our Supreme Court subsequently applied the *Blankenship* rule to the theory of aiding and abetting in *State v. Allen*, 339 N.C. 545, 558, 453 S.E.2d 150, 157 (jury instruction relating defendant "should have known" or had "reasonable grounds to believe" another was going to commit murder failed to satisfy *Blankenship* rule because it "d[id] not convey the concept of specific intent necessary for aiding and abetting a first-degree murder"), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 676, 483 S.E.2d 396, 413-14, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997); *see also State v. Williams*, 299 N.C. 652, 656, 263 S.E.2d 774, 777 (1980) ("distinction between aiding and abetting and acting in concert . . . is of little significance" (citations omitted)), and *State v. Roope*, 130 N.C. App. 356, 363-64, 503 S.E.2d 118, 124 (according to *Blankenship* rule, "[u]nder either an acting in concert or an aiding and abetting theory, joint participants in a crime can be convicted only where each participant has the requisite *mens rea* for that crime"), *disc. review denied*, 349 N.C. 374, 525 S.E.2d 189 (1998).

Although subsequently overruling *Blankenship* in *Barnes*, our Supreme Court specifically indicated its decision was not to be applied retrospectively. *Barnes*, 345 N.C. at 234, 481 S.E.2d at 72.

Because the crimes with which defendant was charged occurred 18 January 1997, prior to *Barnes*, *Blankenship* governs the case *sub judice*. *See State v. Barrow*, 350 N.C. 640, 648, 517 S.E.2d 374, 379 (1999) (*Blankenship* rule applies to crimes committed 21 January 1995 (after 9 September 1994 *Blankenship* decision but prior to 10 February 1997 *Barnes* decision)). Accordingly, defendant's conviction of a specific intent crime under an aiding and abetting theory would be improper unless the State proved beyond a reasonable doubt that he personally "possessed the requisite *mens rea* to commit the specified crime." *Rivera*, 350 N.C. at 292, 514 S.E.2d at 724.

Kidnapping and first degree burglary are specific intent crimes. *See State v. Surrett*, 109 N.C. App. 344, 348, 427 S.E.2d 124, 126 (1993) ("[k]idnapping is a specific intent crime" and State must prove defendant "unlawfully confined, restrained, or removed the victim for one of the specified purposes outlined in the statute"), and *State v. Simpson*, 299 N.C. 377, 380, 261 S.E.2d 661, 663 (1980) ("[f]elonious intent is an essential element of [first degree] burglary which the State must allege and prove").

Defendant argues the trial court's aiding and abetting instructions were erroneous in failing to require that the jury find he possessed the specific criminal intent for commission of first degree burglary and second degree kidnapping. As *Blankenship* governs the instant case, *see Barrow*, 350 N.C. at 648, 517 S.E.2d at 379, and *Rivera*, 350 N.C. at 292, 514 S.E.2d at 724, we must agree.

To be convicted as an aider and abettor,

one must . . . share the criminal intent with the principal, and render assistance or encouragement to him in the commission of the crime.

*Allen*, 339 N.C. at 558, 453 S.E.2d at 157 (citation omitted); *see Gaines*, 345 N.C. at 676, 483 S.E.2d at 413-14 (requirement of actual or constructive presence to prove crime under aiding and abetting theory abrogated).

Upon review of the challenged instructions *sub judice*, we conclude the trial court's use of the phrases "knowingly encouraged and[/or] aided" did not "adequately convey" the requisite specific intent concept as expressly requested by defendant in writing, *see Green*, 305 N.C. at 477, 290 S.E.2d at 633, and the trial court therefore committed reversible error in failing to relate the substance of defendant's requested instruction, *see Spicer*, 285 N.C. at 284, 204

S.E.2d at 647; *see also Blankenship,* 337 N.C. at 557-62, 447 S.E.2d at 734-38 (specific intent required to satisfy intent element of first-degree murder on acting in concert theory), and *Allen,* 339 N.C. at 558, 453 S.E.2d at 157 (instruction relating defendant "should have known" or had "reasonable grounds to believe" another was going to commit murder failed to satisfy *Blankenship* because it "d[id] not convey the concept of specific intent necessary for aiding and abetting a first-degree murder").

The State counters that the trial court's inclusion in its jury charge of the phrase "knowingly aided" was approved in *Allen* as having given rise to a "probable interpretation" by the jury that it was required to find "that defendant knowingly participated in the crime based on an intent to assist" the perpetrator in committing it. *Allen,* 339 N.C. at 558, 453 S.E.2d at 158. However, the defendant therein had failed to proffer any specific requested instruction nor did he object to the court's charge to the jury, thereby requiring plain error review on appeal of the entire jury charge to determine whether the "instructional error . . . had a probable impact on the jury's finding of guilt." *Id.* at 558, 453 S.E.2d at 157-58 (under plain error review, "[i]t is a rare case in which an improper instruction will justify reversal of a criminal conviction where no objection has been made in the trial court") (citations omitted).

By contrast, defendant in the case *sub judice* tendered written requested instructions delineating the requirement of specific intent for conviction based upon the theory of aiding and abetting, and interposed appropriate objections to the trial court's failure to so instruct the jury, thereby obviating plain error review. As opposed to a plain error analysis, our decision herein is governed by *Spicer,* wherein failure to relate the substance of "a timely written request for an instruction that is correct in law and supported by the evidence," *Dodd,* 330 N.C. at 753, 412 S.E.2d at 49, was held to constitute reversible error, *Spicer,* 285 N.C. at 284, 204 S.E.2d at 647.

In short, the trial court erred in failing to include within its charge to the jury the substance of defendant's properly requested instruction. *See id.,* and *Blankenship,* 337 N.C. at 557, 447 S.E.2d at 736 ("instructions permit[ting] defendant to be convicted of [first degree murder] when he himself did not inflict the fatal wounds, did not share a common purpose to murder . . . and had no specific intent to kill the victims when the fatal wounds were inflicted" constituted error).

In light of our holding awarding defendant a new trial on the charges of first degree burglary and second degree kidnapping, we decline to discuss defendant's remaining assignments of error.

New trial.

Chief Judge EAGLES and Judge HUNTER concur.